RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0046p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

VINCENT JORDAN,

　　　　*Petitioner-Appellant,*

　　*v.*

PATRICK HURLEY,

　　　　*Respondent-Appellee.*

No. 03-3631

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 02-00596—George C. Smith, District Judge.

Submitted: October 27, 2004

Decided and Filed: February 2, 2005

Before: KEITH, CLAY, and BRIGHT, Circuit Judges.[*]

---

**COUNSEL**

**ON BRIEF:** M. Scott Criss, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee. Vincent Jordan, Marion, Ohio, pro se.

BRIGHT, J., delivered the opinion of the court, in which CLAY, J., joined. KEITH, J. (pp. 6-9), delivered a separate dissenting opinion.

---

**OPINION**

---

BRIGHT, Circuit Judge. Vincent Jordan, appellant, was convicted of rape after a second jury trial in the state courts of Ohio. He seeks relief from his conviction and eight-year sentence under a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed in the United States District Court for the Southern District of Ohio.[1] The district court denied relief and Jordan brings this appeal under a Certificate of Appealability relating to his claims that the state trial court

---

[*]The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

[1]The Honorable George C. Smith, United States District Judge for the Southern District of Ohio, Eastern Division.

deprived him of his Sixth Amendment right of confrontation and Fourteenth Amendment right to due process in the conduct of the trial and that his conviction was not supported by the evidence. Specifically, Jordan contends that the state trial judge erred in permitting the prosecutor to ask leading questions during direct examination of the alleged victim and additionally erred in restricting cross-examination of the victim. Jordan also contends no rational trier of fact could have found that he raped the victim. We reject these contentions and affirm.

## I. BACKGROUND

The State of Ohio initially charged Jordan with two counts of rape. The first trial ended in a mistrial when the jury could not reach a verdict. The State brought a second indictment in two counts against Jordan charging forcible rape involving vaginal intercourse and separately fellatio. At trial, the prosecutor called the victim, who has Down syndrome, to testify. The trial court conducted voir dire and found the victim competent to testify.

The prosecutor, over objection, used leading questions in examining the victim. Further, the trial court limited cross-examination by barring Jordan's counsel from attempting to impeach the victim with her testimony in the first trial. The jury found Jordan guilty of the vaginal intercourse rape charge.[2] The trial court sentenced Jordan to eight years imprisonment and found Jordan to be a sexual predator.

Jordan, represented by counsel, appealed to the Ohio Court of Appeals, which affirmed the conviction, but reversed and remanded the trial court's sexual predator determination. Jordan, represented by counsel, sought review in the Ohio Supreme Court. That court denied leave to appeal. Thereafter, Jordan filed this pro se petition for a writ of habeas corpus. The district court denied relief and dismissed Jordan's petition. Jordan obtained a Certificate of Appealability relating to alleged due process and confrontation clause violations regarding evidentiary matters and whether the evidence was sufficient to support his conviction.

## II. DISCUSSION

In an appeal of a habeas proceeding, this court reviews the district court's legal conclusions *de novo* and its factual findings for clear error. *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002).

The Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254, placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Under section 2254(d)(1), a writ may issue only if "the state-court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" *Id.* (quoting § 2254(d)(1)).

Jordan argues that the state trial court violated his right of confrontation by allowing the prosecutor to ask leading questions in examining the victim. This claim relates to a state rule of evidence, and federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990).

The victim has Down syndrome and therefore had difficulty responding to the prosecutor's questions. Under Ohio law, "[l]eading questions should not be used on the direct examination of

---

[2]The trial court dismissed the fellatio rape charge.

a witness except as may be necessary to develop his testimony." Ohio R. Evid. 611(c) (2004). In interpreting this rule, Ohio courts have permitted prosecutors to use leading questions "on direct examination where the victim is of tender years," *State v. Timperio*, 528 N.E.2d 594, 596 (Ohio Ct. App. 1987), or when the witness "appeared to be nervous and 'a little slow' and 'straining' with his answers," *State v. Smith*, 684 N.E.2d 668, 689 (Ohio 1997). While the victim is not a child, she functions at a very basic level. As such, leading questions are permitted under such circumstances. *See, e.g.*, *United States v. Shoupe*, 548 F.2d 636, 641 (6th Cir. 1977) ("the use of leading questions during the direct examination of a witness falls within the sound discretion of the trial court").

Federal courts have similarly found that leading questions on direct examination are permissible in questioning certain witnesses, including a child sexual abuse victim, a foreign witness testifying through a translator, an unusually soft-spoken and frightened witness, and a mentally retarded adult who was the victim of sexual abuse. *See, e.g.*, *United States v. Ajmal*, 67 F.3d 12, 15-16 (2d Cir. 1995) (holding that the Sixth Amendment permits leading questions on direct examination of a foreign witness testifying through a translator); *United States v. Castro-Romero*, 964 F.2d 942, 943-44 (9th Cir. 1992) (holding that the Sixth Amendment permits leading questions on direct examination of a child sexual abuse victim); *United States v. Grey Bear*, 883 F.2d 1382, 1393 (8th Cir. 1989) (recognizing that the Sixth Amendment permits leading questions on direct examination in the case of an unusually soft-spoken and frightened witness); *see also United States v. Goodlow*, 105 F.3d 1203, 1207-08 (8th Cir. 1997) (recognizing that Federal Rule 611(c) does not preclude frequent use of leading questions during the direct examination of a mentally retarded adult who was the victim of sexual abuse).

The state trial court did not violate Jordan's right of confrontation by allowing the prosecutor to ask leading questions in examining the victim, because leading questions were permissible under these circumstances. *See, e.g.*, *Shoupe*, 548 F.2d at 641 ("the use of leading questions during the direct examination of a witness falls within the sound discretion of the trial court").

Jordan next argues that the state trial court violated his confrontation right by limiting the cross-examination of the victim. The victim testified in the second trial that she tried to push Jordan away. The victim, however, did not make this claim in her testimony at the first trial. Jordan's attorney wanted to raise this inconsistency by impeaching the victim on cross-examination, but the trial court restricted the cross-examination and prohibited this line of questioning. The state appellate court concluded that the state trial court erred in limiting the cross-examination, but determined that the error was harmless. The federal district court decided that the error did not have a substantial and injurious effect on the fundamental fairness of Jordan's trial.

Confrontation Clause violations are subject to harmless error review. *Bulls v. Jones*, 274 F.3d 329, 334 (6th Cir. 2001). When reviewing state court decisions for harmless error in a collateral appeal this court applies the harmless error standard set out in *Brecht v. Abrahamson*, which holds that a habeas petitioner must establish the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). We conclude that Jordan's inability to impeach the victim did not have a substantial and injurious effect or influence in determining the verdict.

The dissent notes that the victim's testimony that she pushed Jordan away is the only evidence of force or the threat of force. *See* Dissent at 6. The evidence at trial, however, is overwhelming that Jordan used force in raping the victim, therefore the ruling to limit the cross examination cannot be deemed prejudicial.

Ohio law is clear that the circumstances of the alleged rape are proper considerations for the jury in determining whether there was force. *See State v. Carter*, 504 N.E.2d 469, 470-72 (Ohio App. 1985). Specifically, with respect to the admission of evidence, Ohio law endorses

consideration of peculiar vulnerabilities of the victim, the size and demeanor of the defendant, the likelihood of physical injury to the victim, and the victim's fear. *Id.*; *State v. Fowler*, 500 N.E.2d 390, 395 (Ohio App. 1985).

Here, the victim has the mental disability of Down syndrome, and functions at a very basic level. The evidence also showed that Jordan is strong and was a semi-professional football player. Moreover, Jordan admitted on cross examination that the exclusive business of his cab company is driving mentally or physically handicapped people and that he noticed that the victim did not walk or talk well, thus there was clear evidence from which to conclude that Jordan knew the victim had a mental disability. In addition, the alleged rape occurred in a truck parking lot during the evening hours, and according to the victim "it was dark" and there were not a lot of people around. Furthermore, the victim testified that Jordan parked the cab on his own initiative, climbed into the back seat, and took off the victim's clothes. The victim testified she did not fight Jordan when he began taking off her clothes because she was "afraid" of Jordan and thought Jordan was going to hurt her. The victim also testified that Jordan spread apart her legs, which caused her to experience pain. The victim testified she did not want to have sex or to be touched and that she was "scared." Finally, at the end of the sexual encounter, the victim testified that Jordan told her the sexual encounter was a secret and "I won't tell no one about it." After examining the victim's vulnerability, the size and demeanor of Jordan, the likelihood of physical injury to the victim, and the victim's fear, as well as the victim's testimony, we agree with the district court's determination that the error in limiting the cross-examination was harmless.

Jordan admitted that he had intercourse with the victim, but rested his defense on his contention that the victim consented to the act. There is significant evidence that undermines Jordan's credibility and his theory of the case. On direct and cross examination of Jordan, it was adduced that when the police first asked Jordan about the incident Jordan denied having sex with the victim. In addition to this patent contradiction with his trial theory, the jury could have discounted Jordan's version of the events as untruthful because of his past convictions for theft, attempted theft, attempted receipt of stolen property and possession of criminal tools. Further, Jordan asserted that the victim paid him $50 to have sex, but Jordan admitted on cross examination that he lied to the police about having taken the money, instead telling the police that he had told the victim that the sex was for free. The fifty-dollar bill apparently never materialized in the investigation after the alleged rape.

Jordan's credibility is essential on the issue of whether he compelled the victim to have sex by force or by threat of force. Jordan denied compelling the victim to have intercourse, instead maintaining it was consensual sex. Because there is significant evidence that undermines Jordan's credibility, which is essential to his theory of the issue of whether he compelled the victim to have sex by force or threat of force, the district court's determination that the error was harmless has substantial support in the record.

Additionally, Jordan argues no rational trier of fact could have found him guilty of forcible intercourse with the victim. This court reviews the evidence in the light most favorable to the prosecution and must draw every reasonable inference in favor of the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Here, viewing the evidence in the light most favorable to the prosecution, the evidence amply sustains Jordan's conviction. The victim testified to each of the elements necessary to establish that Jordan raped her.

### III. CONCLUSION

Accordingly, we affirm the district court's denial of the writ of habeas corpus.

————————————

**DISSENT**

————————————

KEITH, Circuit Judge, dissenting.  While I agree that the use of leading questions on direct examination was not error, I disagree with the majority's conclusion that the district court's refusal to allow defense counsel to cross-examine and impeach the alleged victim, C. Byers[1] ("Byers"), regarding her prior inconsistent statement constituted a mere harmless error.  I therefore respectfully dissent.

**I.**

Petitioner, Vincent Jordan, was a taxicab driver who transported Byers, a woman with Down syndrome, to her place of employment.  It is undisputed that during the second occasion that Jordan drove her to work, Jordan pulled over, placed on a condom, and he and Byers had sexual intercourse in the back seat of the vehicle.  As a result of this encounter, Jordan was charged under Ohio state law with two counts of rape against Byers.  Jordan has consistently maintained that Byers consented to the sexual encounter.

Jordan's first trial began on September 14, 1999, but ended in a mistrial because the jury could not reach a unanimous decision.  During this trial, Byers's testimonial recitation of the incident did not include any statement indicating that she pushed Jordan away from her during the sexual encounter.  Several months after the first trial, the prosecution tried Jordan again based on the original charges.[2]  The second trial began on January 24, 2000.  The only evidence introduced to support a finding of the necessary element of force or the threat of force was testimonial evidence from Byers.  While there were other statements in her testimony that could lead a reasonable jury to believe that force or the threat of force was used, only one statement—that Byers pushed Jordan away from her—was consistent and uncontested.  Despite the relative importance of this issue, the trial court refused to allow Jordan's defense attorney to impeach Byers regarding her prior inconsistent statement inasmuch as she failed to mention the use of *any* force during the first trial.  At the close of the second trial, the jury deliberated for six-and-a-half hours, over two days, and ultimately found Jordan guilty of engaging in vaginal intercourse with Byers through force or the threat of force.  Jordan was sentenced to eight years imprisonment.[3]

Jordan filed an appeal with the state court, in which he argued that his confrontation and due process rights were violated.  In particular, Jordan claimed that the trial court committed reversible error by allowing the prosecution to ask the alleged victim leading questions on direct examination and by limiting the scope of his cross-examination of his accuser.  Jordan also claimed that the evidence presented was insufficient to find guilt beyond a reasonable doubt.  The appellate court determined that the limitation of cross-examination was, in fact, error, but it was harmless.  The court therefore affirmed Jordan's conviction.  After exhausting his state remedies, Jordan filed a petition for a writ of habeas corpus with the United States District Court for the Southern District of Ohio, restating these constitutional claims.  Like the state appellate court, the district court found that the trial court erred in prohibiting the cross-examination of Byers regarding her prior

———————————

[1]Her first name has purposely been withheld.

[2]After the first trial, the prosecution brought a second indictment against Jordan, but it was dismissed on speedy trial grounds.

[3]The court also determined Jordan to be a sexual predator, but that decision was reversed by the state court on appeal and is not at issue before this court.

inconsistent statement, but also found the error to be harmless. Thus, the district court denied his petition.

On appeal, the majority has agreed with the decision of the district court. For the reasons explained below, I am unable to join that opinion.

## II.

Under Ohio statute, rape is defined as "sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Ohio R.C. § 2907.02(A)(2). An essential element of the crime of rape is proof, beyond a reasonable doubt, that the defendant used "force or [the] threat of force." *Id.* Regarding this element, the jury was instructed as follows:

> Force means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. In determining whether the defendant threatened the immediate use of force, . . . you may consider the size and demeanor of the defendant, the likelihood of physical injury from the defendant's conduct, and any peculiar vulnerability of the victim.

J.A. at 813-14. *See State v. Russell*, 1991 WL 57331, *5 (Ohio App. 1991) (citing *State v. Carter*, 504 N.E.2d 469 (Ohio App. 1985)).

Byers's testimony was the only evidence offered to prove that Jordan used or threatened the immediate use of force—a necessary element of the crime.[4] Her testimonial evidence was often inconsistent, except regarding the issue of whether Byers pushed Jordan away from her while he was inserting his penis into her vagina. On *four* separate occasions during direct examination, the prosecution questioned Byers about her allegedly pushing Jordan away from her; three of those four times Byers was asked a leading question. The first time, the prosecution asked, "You held your hands up like this, right?" and she responded, "I did it [(i.e., held her hands up)] while I was trying to push him away." J.A. at 537. The second time, the prosecution asked, "What do you mean you didn't like [his penis]?" and she responded, "I tried to push him away." *Id.* at 544. The third time the prosecution stated, "Crystal, you said one time that 'I tried to push him away,'" and she answered, "Yeah, Yes." *Id.* at 560. After she answered, the prosecution continued to question Byers about the pushing; she testified that she pushed Jordan "because [she] didn't want him to touch [her] like that." *Id.* at 561. The prosecution even had her demonstrate on the stand how she pushed him. Finally, immediately after Byers testified that Jordan put his penis inside of her vagina, the *very last question* on direct examination was: "Did you try and push [Jordan] away before he did that?" Byers answered, "Yes, I did." *Id.* at 562.

Even though there were multiple references made to Byers pushing Jordan, the trial judge did not permit Jordan's defense attorney to impeach Byers's testimony using her prior inconsistent statement. The state appellate court and the federal district court both found that the trial court judge's ruling constituted error. Those courts, however, reasoned that this was harmless error. The majority agrees and concludes that "Jordan's inability to impeach the victim did not have a substantial and injurious effect or influence in determining the verdict." Majority at 3.

---

[4] The majority mischaracterizes my statement here by claiming that I am noting that "the victim's *testimony that she pushed Jordan away* is the only evidence of force or the threat of force." Majority at 3 (emphasis added). Rather, I am simply stating that Byers's entire testimony, including but not limited to her statement regarding pushing Jordan, is the only evidence offered by the prosecution to prove the element of force; Jordan does not concede that he either used or threatened the use of force.

The standard of "harmless error" has led to some confusion and the Supreme Court has clarified its meaning in the past several years. Specifically, the Court indicated that "[w]hen a federal judge in a habeas proceeding is in grave doubt whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993)). The Court defined "grave doubt" as when "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. As the Court explained, "'if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.'" *Id.* at 437-38 (quoting *Kottteakos v. United States*, 328 U.S. 750, 765 (1946)). Moreover, we have indicated that "[t]he standard of review requires the reviewing court to examine the *effect of the error on the jury* rather than the sufficiency of the evidence at trial." *Calvert v. Wilson,* 288 F.3d 823, 833 (6th Cir. 2002) (emphasis added) (noting that the district court erred in denying the writ because its discussion focused on the "significant evidence" against the defendant).

The majority finds that refusing to allow Jordan's attorney to impeach Byers on her statement regarding pushing was harmless error. To support its conclusion, the majority reasons that there was overwhelming evidence presented for the jury to find Jordan guilty of rape, regardless of the error. I disagree with the conclusion that the other evidence was overwhelming, and I also disagree that such an inquiry is a proper application of the law.

Despite the fact that Jordan was erroneously prohibited from impeaching Byers on the issue of force, the resolution of this case was not an easy decision for the jury; they deliberated for six-and-a-half hours, over a two-day period. In light of the other evidence to prove the element of force or the threat of force beyond a reasonable doubt, the jury could have certainly relied upon what appeared to be the uncontested and consistent statement of Byers regarding her pushing Jordan away to find the requisite element of force as provided in the jury instructions.

The majority suggests that the jury could have found the element of the threat of the immediate use of force based on Byers's vulnerability, Jordan's size and demeanor, the likelihood of physical injury, and Byers's fear.[5] Majority at 4. To show how these factors, in particular the last two, could have led the jury to find the element of the threat of force, the majority cites to Byers's testimony.

I agree that the prosecution elicited testimony from Byers that may lead a reasonable jury to believe that Jordan threatened the immediate use of force; however, her relevant testimony, other than her pushing Jordan away, was highly contested and often inconsistent. Even if the jury discounted Jordan's testimony for lack of credibility, as the majority suggests, Byers contradicted *herself* on numerous occasions. For example, Byers testified that she was scared when Jordan was attempting to have intercourse with her because he hurt her, J.A. at 540, but admitted that she was hurt "because [she] got surgery on her hip," *id.* at 537. This testimony leaves reasonable doubt as to whether she was hurt primarily as a result of force exerted by Jordan or whether her pain was simply discomfort due to her recent surgery. Even though Byers testified that she was afraid that Jordan was going to hurt her, *id.* at 631, she also indicated that it was not "tough getting [her] clothes off" nor did she scream or fight when Jordan was allegedly removing her clothes,[6] *id.* at 627. Moreover, to demonstrate that Jordan used force in having sexual intercourse with Byers, the

---

[5] Although the majority correctly states that Ohio law allows a jury to consider the victim's fear when determining whether the defendant threatened the use of force, no specific jury instruction was given as it relates to fear.

[6] Jordan testified that Byers had removed her own clothing. *Id.* at 701.

prosecution attempted to prove that Jordan had torn her underwear.  Yet when Byers was asked by the prosecution if her underwear had a hole in them when she put them on, she simply  responded, "I hate to say this, but they was dirty."  *Id.* at 556.  Byers also indicated that she might have told Jordan that her underwear was old and torn.  *Id.* at 584.  These inconsistent statements give rise to a reasonable doubt as to whether the sexual act occurred with the necessary "force or threat of force."  The inconsistency of this other evidence provides all the more reason why I cannot agree that the trial court's error in refusing to permit the defendant to confront his accuser on her prior inconsistent statement had no substantial or injurious effect on the jury.

People with Down syndrome, such as Byers, are among those most in need of the protection of our courts.  In seeking to protect these citizens, however, courts cannot dismiss the fundamental rights guaranteed to everyone under the Constitution.  This includes a defendant's Sixth Amendment "right to confront witnesses against him." *United States v. Kone*, 307 F.3d 430, 437 (6th Cir. 2002).  After reviewing the record de novo, it is clear that the constitutional rights of the defendant in this case were compromised.  Indeed, I am left with grave doubt regarding the substantial and injurious effect that this error had on the jury.  Because I cannot in good conscience conclude that the error in this case was harmless, I respectfully dissent.