RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0188p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

EARL GILES,

        *Petitioner-Appellant,*

    *v.*

  No. 04-3708

JAMES SCHOTTEN, Warden,

        *Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 95-00195—John M. Manos, District Judge.

Argued: September 16, 2005

Decided and Filed: June 2, 2006

Before: CLAY and GIBBONS, Circuit Judges; STEEH, District Judge.[*]

---

## COUNSEL

**ARGUED:** William T. Doyle, Cleveland, Ohio, for Appellant. M. Scott Criss, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** William T. Doyle, Cleveland, Ohio, for Appellant. J. Joseph Bodine, Jr., OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

    GIBBONS, J., delivered the opinion of the court, in which STEEH, D. J., joined. CLAY, J. (pp. 7-9), delivered a separate dissenting opinion.

---

## OPINION

---

    JULIA SMITH GIBBONS, Circuit Judge. On May 17, 1993, Earl Giles was convicted on one count of felonious sexual penetration in violation of Ohio Revised Code § 2907.12 and one count of gross sexual imposition in violation of Ohio Revised Code § 2907.05. The conviction was upheld by the state appellate courts. On January 26, 1995, Giles filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Ohio. The district court denied the petition. On appeal, the Sixth Circuit vacated the district court's judgment and remanded the case for further factual findings and, if necessary, an evidentiary

---

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

hearing. On remand, the district court again denied Giles's habeas petition but granted a certificate of appealability on the issue of whether the trial court violated Giles's rights by denying him an additional independent medical examination of the children who were the alleged victims. Giles now appeals. We affirm the denial of the petition.

I.

In 1990, Giles separated from his wife, Virginia Beard. From April until September 1992, Beard was involved in outpatient treatment for alcohol and drug abuse. During this time, Giles acted as a babysitter for the two children Giles and Beard had together, Shannon and Ashley. At the time, Giles was living with Patricia Morgan, his girlfriend.

In September 1992, Ashley told her mother that her vagina was hurting her and that her father had pulled down her panties and bit her between the legs. Beard took Ashley to the emergency room at University Hospital, but she refused to allow herself to be examined by a physician. Some time later when Beard was preparing to take Ashley back to the hospital, Shannon told her mother that she had something to tell her mother but did not want to tell her until they reached the hospital. At the hospital, Beard heard Shannon say that her father had put his thing in her.

On November 15, 1992, Dr. Amy Richardson, a board-certified pediatrician and an Assistant Professor of Pediatrics and director of the Child Protection Program at Case Western Reserve University, Rainbow Babies and Children's Hospital, examined Ashley and Shannon. Dr. Richardson's examination revealed no evidence of sexual abuse in Ashley. However, Dr. Richardson's examination of Shannon revealed an attenuated hymen, a condition consistent with repeated penetrating trauma.

On December 10, 2002, Ashley and Shannon were interviewed by Brenda Joyce Wilson, a sexual abuse social worker employed by the Department of Human Services and unaffiliated with either the defendant or the prosecution. Sandra Spinello, a social worker employed by the Cuyahoga County Division of Human and Family Services, and Marvin Walton, a police officer in the Cleveland Police Department, observed the interview through a two-way mirror. At trial, Wilson testified for the prosecution that Shannon described abuse inflicted on her by her father using anatomically correct dolls. Walton corroborated Wilson's testimony on this point. Spinello testified at trial that Shannon was not very verbal during the interview and that Wilson did the majority of the talking. Spinello also stated, however, that she, unlike Wilson and Walton, did not have notes from the interview session.

On January 27, 1993, a Cuyahoga County grand jury returned a six-count indictment against Giles for sexually abusing Ashley and Shannon. Counts one and two charged Giles with the rape of Shannon Beard in violation of Ohio Revised Code § 2907.02 with a specification of force, count three charged Giles with felonious sexual penetration of Shannon Beard in violation of Ohio Revised Code § 2907.12 with a specification of force, count four charged Giles with gross sexual imposition of Shannon Beard in violation of Ohio Revised Code § 2907.05, count five charged Giles with the rape of Ashley Beard in violation of Ohio Revised Code § 2907.02 with a specification of force, and count six charged Giles with gross sexual imposition of Ashley Beard in violation of Ohio Revised Code § 2907.05.

On April 21, 1993, Giles entered a plea of not guilty on all of the charges. On May 4, 2003, Giles filed a motion to compel independent psychological and medical examinations of Shannon and Ashley Beard. Following a May 12, 1993, hearing, the trial court denied Giles's motion, stating:

> The Court can't order psychological evaluation on every witness. In this type of trial the trauma has already been perpetrated. If these two young girls are to be believed,

assuming that for a moment, and then bringing them down to Court and they are going to have to be questioned by the Judge for competency to testify, then they're going to be subjected to direct and cross-examination here, if they are permitted to testify. And on top of that you want a psychiatric examination? How much do you have to put these two little girls through?

When the defense counsel pointed out to the court in response that Giles was facing four life sentences, the trial court stated:

I think your request here goes beyond whatever obligation you may have to your client in this instance. Whether they were psychologically sound or not would not excuse the acts charged in this indictment if they did occur. It is just that simple. In fact, if they were found to be psychiatrically unsound, it would make the crime even more heinous if the crime did occur.

The trial court then conducted a voir dire examination to determine the competency of the children. The trial court found Shannon to be competent but Ashley to be incompetent.

The jury trial commenced on May 12, 1993. At the close of the prosecution's case, the defense made a motion pursuant to Ohio Criminal Rule 29 for a judgment of acquittal. The trial court granted the motion with regard to both counts relating to Ashley, but denied the motion with regard to all charges relating to Shannon. On May 17, 1993, the jury convicted Giles of one count of felonious sexual penetration in violation of Ohio Revised Code § 2907.12 and one count of gross sexual imposition in violation of Ohio Revised Code § 2907.05. Giles was sentenced to life imprisonment on the felonious sexual penetration charge and two years imprisonment to run concurrently on the gross sexual imposition charge. Giles filed a timely appeal, arguing as one ground on appeal that his constitutional rights had been violated when he was denied the opportunity to conduct independent physical and psychological examinations. The Ohio Court of Appeals affirmed his conviction on July 14, 1993. *State v. Giles*, No. 65731, 1994 WL 372330 (Ohio Ct. App. July 14, 1994). Giles filed a timely notice of appeal to the Ohio Supreme Court. The Ohio Supreme Court denied Giles leave to appeal, concluding that Giles' appeal did not involve any substantial constitutional question. *State v. Giles*, 642 N.E.2d 386 (Ohio 1994).

Giles filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 26, 1995 in the United States District Court for the Northern District of Ohio, claiming that the state court denied him the right to present evidence and therefore present a defense to the charges against him. *Giles v. Schotten*, 182 F.3d 917, 1999 WL 519234, at * 3 (6th Cir. July 16, 1999). A magistrate judge recommended, without holding an evidentiary hearing, that the district court deny the petition. *Id.* On January 10, 1997, the district court denied Giles' habeas petition. *Id.* Giles filed a timely notice of appeal to the Sixth Circuit on February 3, 1997, and also moved the court for a certificate of appealability on March 6, 1997. *Id.* The Sixth Circuit treated the motion as a motion seeking a certificate of probable cause and granted the request on March 3, 1998. A panel of this court found that the district court did not properly analyze the state court facts regarding the reason Giles sought independent medical and psychological evaluations of the children because the court held that the district court improperly applied the § 2254(d) presumption of correctness to the state court findings. It held that it could not determine whether the state court had properly applied Ohio law to Giles's claim. *Id.* at * 6. The panel therefore vacated the district court opinion and remanded the case to the district court for the court to make specific findings or to conduct an evidentiary hearing on the factual issues involved. *Id.*

Once the case was remanded, the Warden moved for summary judgment. The Warden argued that regardless of whether Giles sought the examinations for a proper purpose, Giles was nonetheless not entitled to them as a matter of constitutional law. In the district court's view, this

argument rendered moot the panel's directive to the district court to make specific factual findings or to hold an evidentiary hearing in order to discern the reason that Giles sought the examinations. The district court then examined the merits of the legal issue of whether Giles's constitutional rights were violated by the trial court's denial of his request to conduct the independent medical and psychological examinations of the children. The district court determined that the denial of the request did not render the trial fundamentally unfair, and therefore, Giles's constitutional rights had not been violated. The district court granted the motion for summary judgment but granted a certificate of appealability on the issue of whether the trial court violated Giles's constitutional rights by denying him an additional independent medical examination of the victims. On May 20, 2004, Giles filed a timely notice of appeal.

## II.

At the outset, addressing Judge Clay's dissenting opinion, the district court of course had an obligation to follow this court's instructions in our 1999 opinion. But when a case is remanded, events often occur that were not considered at all by the appellate court or addressed by the remand instructions. To name just a few examples of such events, parties die; claims become moot; amended pleadings create new issues and transform old issues. And, as happened here, parties change litigation strategy and bring before the court new options for resolution of the case. When the district court deals with such events, it does not necessarily act in violation of the court of appeals' instructions or exceed the scope of the remand.

Here, when this court remanded the case, it asked the district court to make its own findings as to the purpose for which Giles sought the examinations of the girls, with or without an evidentiary hearing. *Giles v. Schotten*, 182 F.3d 917, at \*6. The warden then pursued an argument not addressed by the court of appeals' majority opinion and moved for summary judgment. He argued that, even if Giles sought the examinations for a permissible purpose (essentially conceding for purposes of the motion that the district court's factual findings on remand would be adverse to his position), the state trial court's denial of the request for independent medical and psychological examinations did not render the trial fundamentally unfair. Thus, the warden argued, the denial did not violate Giles's constitutional rights. The trial court agreed. In doing so, it did not violate this court's instructions or exceed the scope of the remand; it simply proceeded to the ultimate issue in the case, as the warden's position permitted it to do. And in doing so, it implicitly satisfied the remand order's requirement for fact finding by assuming that defendant sought the examinations for a permissible purpose. The district court carefully explained all of this in its opinion on remand and specifically noted that resolving the issue of *why* Giles requested the examinations was no longer necessary and that *State v. Boston*, 545 N.E.2d 1220, 1240 (Ohio 1989) (forbidding expert evidence on "the veracity of the statements of a child declarant" but permitting expert evidence as to the occurrence of sexual abuse), and its progeny were therefore inapplicable to the analysis.

## III.

Giles filed his petition prior to the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). Under pre-AEDPA analysis we review a district court's refusal to grant a writ of habeas corpus *de novo*. *Hicks v. Collins*, 384 F.3d 204, 210 (6th Cir. 2004).

On appeal, Giles argues that the district court erred in finding that the trial court's decision to deny Giles' motion to require both Ashley and Shannon to submit to psychological and medical examinations did not deprive Giles of a fundamentally fair trial.[1] Giles claims that he was denied

---

[1]The district court's grant of a certificate of appealability was limited to the request for a medical examination. As this court noted in its 1999 opinion, the certificate of appealability is properly treated as a certificate of probable cause because the petition was filed pre-AEDPA. Given the more general nature of a certificate of probable cause, it seems

a fundamentally fair trial and was deprived of his right to confront witnesses and his due process rights because of the trial court's refusal to compel the independent examinations. The trial court's decision not to require the examinations is an evidentiary ruling based on state law. Therefore, federal habeas review of this issue is "extremely limited." *Jordan v. Hurley*, 397 F.3d 360, 362 (6th Cir. 2005). "State court evidentiary rulings do not rise to the level of due process violations unless they 'offend . . . some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)). Thus, the panel may only grant habeas relief on this issue if the trial court's evidentiary ruling was so egregious that it resulted in a denial of fundamental fairness. *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004).

A defendant's right to due process in the criminal context is essentially the right to defend himself against the charges the state has brought against him. As a result, the right to confront and cross-examine witnesses and to call one's own witnesses is fundamental to a defendant's due process rights. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). "This right is not absolute, however, and must accommodate the state's 'compelling' interest in 'the protection of minor victims of sex crimes from further trauma and embarrassment.'" *United States v. Weekley*, 130 F.3d 747, 753 (6th Cir.1997) (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982)). The Supreme Court has held that in child sex abuse cases, "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Maryland v. Craig*, 497 U.S. 836, 853 (1990). A defendant's right to present evidence may be subject to restrictions, provided that the restrictions are not "arbitrary or disproportionate to the purposes they are designed to serve." *Rock v. Arkansas*, 483 U.S. 44, 55-56 (1987); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998). "[T]he exclusion of evidence [is] unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308 (citations omitted). As the district court noted, the Sixth Circuit has not previously ruled on the due process implications, if any, of the denial of a defendant's request for independent medical or psychological examinations of his accusers.

In this case, the medical examination was performed by Dr. Richardson, who testified that she had examined over one thousand children for alleged sexual abuse and described in detail the methods used to determine whether a child's body shows signs of having been subject to sexual abuse. As previously noted, Dr. Richardson's examination of the children revealed that while Ashley showed no signs of abuse, Shannon showed signs consistent with repeated sexual abuse.

The psychological examination was conducted by Wilson, who testified that she had worked with the Department of Human Services for over nineteen years and had worked specifically with the sex abuse department for over eight years. In that capacity, Wilson testified that she has conducted hundreds of interviews with small children regarding sexual abuse allegations. Wilson testified that Shannon described instances of abuse to her during the interview but that Ashley did not provide much information about abuse. Spinello and Walton observed the interview through a two-way mirror and corroborated Wilson's testimony.

Both Richardson and Wilson were well-qualified witnesses, testified at trial, and were subject to cross-examination. Furthermore, Wilson's interview with Ashley and Shannon was observed by two other individuals, both of whom testified and were cross-examined regarding their observations. As a result, there is no clear reason that independent medical or psychological examinations were necessary in this case. *See United States v. Rouse*, 111 F.3d 561, 566-67 (8th

---

appropriate to discuss the request for a psychological examination as well. The analysis for both types of examinations is the same.

Cir. 1997) (affirming trial court's denial of defendant's request for further medical and psychological interviews of child witnesses where individuals conducting interviews were well-qualified and were subject to cross-examination).

An examination of the record in this case reveals that the trial court denied Giles's request for further examinations of the children out of concern for the welfare of the children. As noted above, the Supreme Court has held that a State's interest in "safeguarding the physical and psychological well-being of a minor [] is a compelling one." *Globe Newspaper Co.*, 457 U.S. at 607. Giles cites no authority indicating precisely why he believes that the trial court's ruling on this point denied him a fundamentally fair trial. Because Giles cannot show that the trial court's ruling on this evidentiary issue was so egregious that it resulted in a denial of fundamental fairness, Giles is not entitled to habeas relief.

Although Giles cites no legal authority directly supporting his claim that the ruling on the evidentiary issue violated his due process rights, he makes two arguments purportedly based on the factual record. First, he argues that Spinello's testimony was inconsistent with that of Wilson and that this inconsistency demonstrates the need for a second examination. The record, however, reveals no such inconsistency. Spinello observed Wilson conducting the interview with the children. She had very little recollection of what the conversation was between Wilson and the children, although she did indicate that Wilson did most of the talking and the children gave mostly "yes" and "no" answers. Her lack of memory does not create an inconsistency with Wilson's more specific testimony and in no way casts doubt on the reliability of the results of Wilson's examination. Second, Giles argues that the State obtained an unfair advantage by having expert testimony available to it. This argument overlooks the fact that the expert examinations were not done as a part of the State's investigation or trial preparation. Neither expert was affiliated with the prosecution; their services were rendered as a result of the girls' visits to a hospital emergency room, where their mother had taken them.

Finally, we note that the record fails to reflect any harm arising from the denial of Giles's request that could amount to a deprivation of fundamental fairness. During the trial Giles's counsel consulted with an expert who had reviewed Dr. Richardson's report and who was available to testify and also to assist counsel in his cross-examination of Dr. Richardson. Yet, the record indicates no issue raised about Dr. Richardson's methodology or conclusions or any explanation as to how another examination might have yielded a different result. In the district court Giles had an opportunity to present evidence in response to the summary judgment motions but did not do so. We are left simply with a speculative assertion that a second examination might have helped in some unidentified way.

IV.

Because Giles has not shown that the state trial court's ruling on Giles's request for independent examinations resulted in a denial of fundamental fairness, we affirm the district court's denial of the petition.

———————————

**DISSENT**

———————————

CLAY, Circuit Judge, dissenting. I cannot agree with the majority's decision to affirm the order of the district court. Because the district court failed to abide by this Court's previous remand instructions, this Court should again remand this case to the district court so that it may follow those previous remand instructions.

As an initial matter, because Petitioner filed his habeas petition before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the pre-AEDPA standard of review applies. As a result, on federal habeas review, "the findings of a state court generally 'shall be presumed to be correct.'" *Giles v. Schotten*, No. 97-3218, 1999 WL 519234, at *4 (6th Cir. Jul. 16, 1999) (unpublished decision) (quoting 28 U.S.C. § 2254(d) (1994)). This presumption applies to the factual findings of state trial and appellate courts. *Id.* (citing *Sumner v. Mata*, 449 U.S. 539, 545-46 (1981)). This presumption, however, is not tantamount to blind acceptance on the part of the federal courts; "the district court should not presume correct a particular factual finding if the petitioner establishes or it otherwise appears from the record that the record as a whole does not fairly support the State's factual determination . . . ." *Id.* (citing 28 U.S.C. § 2254(d)(8) and *McMillan v. Barksdale*, 823 F.2d 981, 983 (6th Cir. 1987)). Thus, the federal courts are required to "'examine the findings of the state judge to determine if they are adequate to support the presumption of correctness under § 2254(d).'" *Id.* (quoting *Fowler v. Jago*, 683 F.2d 983, 987-89 (6th Cir. 1982)). Moreover, state court conclusions as to mixed questions of law and fact or pure questions of law are not entitled to the presumption of correctness under § 2254(d). *Id.* at *5 (quoting *Cain v. Smith*, 686 F.2d 374, 379-80 (6th Cir. 1982)).

The only issues that this Court should address in connection with this appeal are two unresolved errors of the district court. The district court committed the first of these errors in 1997, when it initially failed to properly analyze Petitioner's claim for habeas relief. *Id.* at *3. At that time, Petitioner argued that the state trial court had violated his due process right to present a defense when it refused his request to conduct independent medical and psychological examinations of the alleged victims. *Id.* at *4. The district court presumed to be correct the factual finding of the state appellate court that Petitioner's only purpose in seeking these examinations was "to challenge the veracity of [the alleged victim's] trial testimony inculpating [Petitioner]." *Id.* (second alteration in the original) (internal quotation marks and citation omitted). The district court then deferred to the legal conclusion of the state appellate court that, under *State v. Boston*, 545 N.E.2d 1220 (Ohio 1989), an expert may not testify as to the veracity of a child witness' testimony, so that the state trial court properly disallowed Petitioner's requested examinations. *Id.*

This Court vacated the judgment of the district court on two grounds. First, the district court erred when it presumed the state appellate court's factual finding to be correct, because the factual finding was not supported by the record. *Id.* at *5. The state appellate court found, and the district court presumed, that Petitioner's sole purpose in seeking the examinations was to challenge the veracity of the alleged victim's testimony; however, "there [was] ample evidence in the record showing Petitioner sought the examinations to collect independent evidence to support his theory that the girls were not abused, and little evidence to fairly support the finding that Petitioner sought the examinations *only* to challenge their credibility." *Id.* This evidence included: (1) the fact that Petitioner sought a medical examination of the alleged victims, which could be legally irrelevant in attacking the veracity of the alleged victim's testimony; (2) the fact that Petitioner's counsel specifically stated that the purpose of the examinations was to obtain independent evidence, arguing "[a]ll we have is what the State will produce. We have no access other than that and that is what we are asking for"; and (3) the fact that when rebutting the findings of the prosecution's medical expert,

Petitioner's counsel again proclaimed Petitioner's right to have an independent medical examination of the alleged victims. *Id.* (alteration in the original).

Second, the district court erred when it deferred to the erroneous legal conclusion of the state appellate court that *Boston* prevented an expert from testifying as to the veracity of a child witness' testimony. In *State v. Stowers*, the Ohio Supreme Court explained that *Boston* only "excludes expert testimony offering an opinion as to the truth of a child's statements (*e.g.*, the child does or does not appear to be fantasizing or to have been programmed, or is or is not truthful in accusing a particular person)." 690 N.E.2d 881, 884 (Ohio 1998). *Boston* "does not proscribe testimony which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." *Id.* (emphasis removed). Thus, even if Petitioner's purpose in seeking the examinations was to find evidence that would assist the jury in determining whether the child was telling the truth, this purpose would be valid under *Boston*, so long as an expert did not testify as to the veracity of the child's testimony.

Because the district court failed to examine the record to determine whether it supported the state appellate court's factual finding, and because the district court failed to examine Ohio case law with respect to *Boston*, this Court ruled in 1999 that the district court erred when it failed to properly analyze Petitioner's habeas application. In order to correct this error, the Court

> vacate[d] the judgment below and remand[ed] to the district court to make specific findings or to conduct an evidentiary hearing on the relevant factual issues in this case, and, if ultimately appropriate, to address the legal issue of whether the State denied Petitioner his constitutional right to present a defense in denying him the opportunity to obtain physical and psychological examinations of the witnesses against him.

*Giles*, 1999 WL 519234, at *6.

Instead of following the unambiguous instructions of this Court, the district court compounded its initial error by explicitly deciding not to make any findings or to conduct an evidentiary hearing on the relevant factual issues to address the legal issue of whether Petitioner was denied his constitutional right to present a defense, in unmistakable disregard of this Court's instructions. Moreover, not only did the district court ignore our instructions, but it also went beyond the scope of this Court's instructions by proceeding to entertain a summary judgment motion against Petitioner. This open disregard of this Court's instructions is not only baffling, it is a direct violation of the mandate rule, which "'compels compliance on remand with the dictates of the superior court.'" *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003) (quoting *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001)). The mandate rule also states that "'a district court is bound to the scope of the remand issued by the court of appeals.'" *Id.* (quoting *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999)). In short, the district court's error in its treatment of this case is two-fold: first, the district court erred when it improperly analyzed Petitioner's habeas application; and second, the district court erred when, on remand, it did not resolve the initial error according to the directive of this court.

The majority opinion sets forth the novel and unusual position that a district court can simply ignore remand instructions from the Court of Appeals if, in the district court's opinion, the district court believes that it is confronted with changed circumstances. The practical import of implementing the majority's views is to encourage the few district judges who may on occasion wish to circumvent the remand instructions of the Court of Appeals. In the instant case, contrary to the majority's contention, there were no changed circumstances which could have justified the district court's failure to follow the remand instructions from the Court of Appeals. Certainly, no such change in circumstances resulted from the warden's filing of a motion for summary judgment

following remand. The district judge should have simply followed the remand instructions and deferred consideration of any dispositive motions until the district court had complied with the instructions it received from the Court of Appeals.

The examples the majority lists with respect to changed circumstances that allow the district court to stray from remand instructions are highly distinguishable. If, for example, a party dies, there is the possibility that a district court has no jurisdiction because there is no case or controversy. Likewise, if a claim becomes moot, a district court cannot exercise jurisdiction over the claim because there is no case or controversy. And when a party amends its pleading, then by nature that alters the case or controversy before the district court. There was simply no such change in the instant case; the warden merely filed a motion for summary judgment.

The principal difficulty with the majority's opinion is that its contention that the examinations were not necessary reveals the majority's disagreement with the remand instructions of the prior Court of Appeals panel which considered the appeal of this case in 1999. By asserting that those remand instructions were inappropriate and signaling its disagreement with the prior panel, the majority for all practical purposes is advocating that our panel sit as a reviewing court over the prior panel's decision. By doing so, not only is it violating the rule that no panel of our Court can overrule a prior panel, *see LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 n.2 (6th Cir. 1995), but it is also usurping the role of the *en banc* Court. Compliance with the prior remand instructions is therefore required out of respect for the prior panel's decision and the rules of this Circuit. Moreover, such compliance would not be difficult to achieve; *after* following the remand instructions from the 1999 appeal, the district court could proceed with the litigation as it normally would. Because the district court completely disregarded the instructions of our prior opinion, I would simply remand the case to the district court so that it may conduct proceedings consistent with that prior opinion.

The majority's highly questionable views regarding the obligation of district courts to follow remand instructions, if they become widely accepted, could have the untoward result of encouraging some obstinate district courts to search for creative ways to avoid complying with remand instructions with which they disagree; and could also have the untoward result of encouraging parties to engage in "judge shopping" or "panel shopping" by encouraging parties to take multiple appeals until they find a Court of Appeals panel which will release them from the remand requirements of a prior panel. It is not hyperbole to state that the implementation of the majority's views, in addition to being contrary to the policy and procedures of the federal courts, could ultimately jeopardize the ability of the superior courts to supervise the lower courts in the federal system.

I therefore respectfully dissent.