**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0402n.06
Filed: July 3, 2008

**No. 06-5431**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JAMES RAY COPE, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: GIBBONS and SUTTON, Circuit Judges; and ACKERMAN, District Judge.[*]

SUTTON, Circuit Judge. A jury convicted James Cope of (1) soliciting a fellow inmate to kill an Assistant United States Attorney (AUSA) and (2) making several threats to kill the same AUSA. A judge sentenced him to several concurrent sentences, the longest being 240 months. We affirm all of Cope's convictions and his sentence on the solicitation charge. As to the threat charges, we vacate the sentence and remand the case to the district court for resentencing.

I.

---

[*]The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

In 2002, grand juries indicted James Cope in two separate cases for committing several marijuana-related offenses and methamphetamine-related offenses. Rather than accept responsibility for the charges or seek to prove his innocence through conventional means, Cope tried something else: to "take out" the AUSA from the Eastern District of Kentucky in charge of investigating and prosecuting the crimes. JA 110. While in pretrial detention in a Fayette County, Kentucky jail, Cope approached a fellow inmate, David Smallwood, and offered to pay him $10,000 to murder the AUSA. Concerned that someone might overhear the conversation and that he would get in "more . . . trouble than . . . [he] was already in," JA 111, Smallwood told his wife about Cope's request, *see* JA 111–12. Not long after Smallwood's conversation with his wife, the FBI contacted Smallwood, who agreed to wear a body wire, allowing the FBI to record conversations between Cope and Smallwood on August 5, 8 and 12, 2002.

On August 5, 2002, Cope told Smallwood, "The only reason I lived to get out of [jail] is to kill me a bunch of sons of bitches." JA 55. He continued, "I'd give both of my places right now [and] put them on public auction to any man that would kill that mother f***er." JA 56. Smallwood asked Cope whom he "want[ed] dead," and Cope responded, "[t]hat damn" AUSA. *Id*. Cope repeated that he would pay Smallwood or anyone else to kill the AUSA: "He would sure, by God, honey be paid . . . . I'll sign my deed or a f***in' twenty thousand dollar piece of property. I mean, I would pay thirty thousand to see that mother f***er be taken out." JA 57.

On August 12, 2002, Cope told Smallwood that "[his] boys [had] ten thousand dollars [of his] money" and just needed him to "tell[] [them] who to go [and get]." JA 63. Cope said that he would "like to feed some of them f***in' dog tick juice" that he had "mixed up." JA 66. Cope told

Smallwood that "the Russians, the KGB," used dog tick juice, otherwise known as ricin, to kill their prisoners. *Id.* Cope told Smallwood that he had learned about the "deadly poison" on 60 Minutes, JA 67, adding that he would like to "[l]ook at that old f***er and say, what's a matter [M]ister [AUSA], and he'll be foamin' at the mouth," JA 69. In response to Smallwood's questioning about how the "dog tick" juice works, Cope answered, "You just boil the f***in' roots or berries up, honey, [and] mix it in somebody's food and they die." JA 72.

Faced with this information, a grand jury charged Cope once with solicitation to murder a federal law enforcement officer, *see* 18 U.S.C. § 373, and three times with threatening to murder a federal law enforcement officer, *see id.* § 115(a)(1)(B). The jury convicted Cope of the solicitation charge and of two of the three threat charges.

At sentencing, the district court determined that Cope was a career offender under the sentencing guidelines, leaving Cope with a guidelines range of 360 months to life. As to the murder-solicitation conviction, the district court sentenced Cope to 240 months, the statutory maximum. As to the murder-threat convictions, the court sentenced him to 120 months on each count, to run concurrently with the 240-month sentence.

II.

A.

Cope first challenges his threat convictions on the ground that the instructions did not ensure that the jury convicted him for statements that constitute "true threats" under § 115(a)(1)(B). Invoking *Virginia v. Black*, 538 U.S. 343 (2003), Cope argues that he could be convicted only upon a finding that he subjectively intended his statements to Smallwood to be threats against the AUSA.

Plain-error review governs this claim because Cope did not object to the relevant jury instruction or otherwise make this argument before the district court. *See United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006); *see also* Fed. R. Crim. P. 30(d); Fed. R. Crim. P. 52(b). That means Cope must establish (among other things) that the jury instructions were "obvious[ly]" or "clear[ly]" erroneous, *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted), and, "taken as a whole, . . . were so clearly erroneous as to likely produce a grave miscarriage of justice," *Newsom*, 452 F.3d at 605 (internal quotation marks omitted).

Section 115(a)(1)(B) prohibits anyone from "threaten[ing] to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties." 18 U.S.C. § 115(a)(1)(B). The statute thus requires the government to prove not only that "the defendant threatened certain action against a government official," but

also that the defendant "made such a threat for the specific purpose of interfering with the performance of official duties or of retaliating for the performance of such duties." *United States v. Veach*, 455 F.3d 628, 633 (6th Cir. 2006). Consistent with these requirements, the court instructed the jury that, in order to find Cope guilty, it had to find that (1) Cope had "threatened to murder a federal law enforcement officer"; (2) he had "intended the threat as an act of retaliation against the officer on account of the performance of official duties"; and (3) "a reasonable person would foresee that the threat would be interpreted by those to whom it was communicated as a serious expression of intent to harm a federal law enforcement officer." JA 140.

The jury had ample factual bases for concluding that the government satisfied these requirements, not the least of which were Cope's own recorded statements to inmate Smallwood and his statements to inmate Robert Alexander. In saying that he wanted the AUSA "dead," JA 56, and "take[n] out," JA 110, Cope explained why (because the AUSA had prosecuted him and his daughter), how (with ricin) and how much he would pay ($10,000 to $30,000)—all with ample conviction.

Cope does not quarrel with the jury's assessment of this evidence. He instead maintains that, after the Supreme Court's First Amendment decision in *Black*, it no longer suffices to ask the jury whether the defendant's statements were objectively threatening. A constitutionally proscribable "true threat," he argues, also must be subjectively threatening from the defendant's perspective. In *Black*, the Court held that legislatures may ban cross burning without violating the First Amendment so long as the alleged criminal act is carried out with an intent to intimidate. *Black*, 538 U.S. at 362–63 (plurality); *see also id.* at 368 (Scalia, J., concurring in part, concurring in the judgment in

part, and dissenting in part) (agreeing with the plurality that, consistent with the First Amendment, a State may "prohibit cross burning carried out with the intent to intimidate"). "True threats," the plurality reasoned, "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* at 359.

Relying on *Black*, Cope maintains that he did not make his statements to Smallwood with a subjective intent to threaten the AUSA. But this is an unusual setting in which to make this argument. Section 115(a)(1)(B) already contains a subjective "intent" requirement—indeed two of them. It prohibits threats against federal officials either "*with intent* to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or *with intent* to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties." 18 U.S.C. § 115(a)(1)(B) (emphases added). And consistent with the terms of the statute, the court instructed the jury to find Cope guilty only if he manifested the requisite intent under one of these alternative methods of proof—here because Cope "intended the threat as an act of retaliation." JA 140. In finding that the evidence showed that Cope intended his threat as an act of retaliation, the jury seemed to do just what Cope asks: It found that his threat was a "true threat" in a subjective sense. Surely a defendant who "intend[s]" a "threat as an act of retaliation" subjectively "intends" the threat to be a real one. Indeed, had the jury in *Black* been instructed that it must find that the defendant "intended" the act of cross burning "as an act of retaliation," it is hard to understand why the First Amendment concerns identified in the opinion

would not have been fully satisfied. To our knowledge, no court has held that *Black* requires district courts to offer any additional subjective-intent instruction in a § 115(a)(1)(B) prosecution.

Contrary to Cope's suggestion, *United States v. Cassel*, 408 F.3d 622 (9th Cir. 2005), does not advance his position. Unlike § 115(a)(1)(B), *Cassel* dealt with a statute (18 U.S.C. § 1860) that does not contain a subjective intent requirement. *See id.* at 626; 18 U.S.C. § 1860 (punishing "[w]hoever, by intimidation . . . hinders, prevents, or attempts to hinder or prevent, any person from bidding upon or purchasing any tract of land so offered for sale"). And while *United States v. Stewart*, 420 F.3d 1007 (9th Cir. 2005), does involve § 115(a)(1)(B), it also does not advance Cope's position. *Stewart*, indeed, makes a similar point to the one we do. "[B]y its express language," the court notes, § 115(a)(1)(B) "contains a specific intent element. . . . Thus, a conviction under that statute could only be had upon proof that the speaker intended the speech to impede, intimidate, interfere with, or retaliate against the protected official. Such proof would seem to subsume the subjective 'true threat' definition announced in *Black* and recognized in *Cassel*; one cannot have the intent required under § 115(a)(1)(B) without also intending to make the threat." *Id.* at 1017.

In reaching these conclusions, however, we do not wish to get ahead of ourselves. The fact remains that this case is here on plain-error review. We therefore need not decide whether *Black* requires or *Cassel* counsels in favor of adding a subjective-intent requirement to other threat statutes—most pertinently, those statutes that do not already contain such a requirement. *See* 18 U.S.C. § 871; *cf. Watts v. United States*, 394 U.S. 705, 707–08 (1969). It suffices to say that Cope has not shown error, much less "plain," "clear" or "obvious" error in his conviction under this statute.

B.

Cope next argues that the district court should have dismissed his indictment because the government never alleged, or for that matter proved, that there was a solicitee other than the government informant. We disagree.

To establish a solicitation violation, the government must prove that the defendant intended that "another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicit[ed], command[ed], induce[d], or otherwise endeavor[ed] to persuade such other person to engage in such conduct." 18 U.S.C. § 373(a). That Cope solicited an informant makes no difference to the validity of the charge. It is not a defense to a solicitation charge that, "unknown to the solicitor, the person solicited could not commit the crime . . . or that the person solicited is an undercover agent and under no circumstances would have committed the crime solicited." *United States v. Hankins*, 195 F. App'x 295, 300 (6th Cir. Sept. 27, 2006) (internal quotation marks omitted); *see also United States v. Devorkin*, 159 F.3d 465, 467–68 n.2 (9th Cir. 1998).

Nor does Cope cite any authority for his additional contention that, because a government agent may not be a conspirator, neither may a government informant be a solicitee. That an informant may not be a co-conspirator does not mean that he may not be solicited.

C.

Relying on Rules 402 and 403 of the Federal Rules of Evidence, Cope maintains that the trial court erred in permitting the government to introduce evidence regarding a 1987 shooting and a 60 Minutes report. He is wrong on both fronts, as the district court did not abuse its discretion in admitting either type of evidence. *See United States v. Goosby*, 523 F.3d 632, 638 (6th Cir. 2008).

1.

The 1987 shooting occurred near Cope's property and was introduced in connection with the solicitation crime. Attempting to convince Smallwood and Alexander that he was serious about murdering the AUSA, Cope told them that he had shot two people when they paddled a canoe near his marijuana plants. One of the victims died, and the other was wounded, but the authorities never discovered who the assailant was. At trial, the government first introduced the testimony of Smallwood and Alexander, who repeated the statements of Cope. It then also called the former Kentucky state police detective who had investigated the crime to establish that a crime had in fact occurred at that location and at the approximate time Cope described.

Cope says that the court should have excluded all of this evidence as irrelevant because the statements were untrue and because the government never charged him with committing this 1987 offense. True or not, however, Cope's statements were made when he was trying to bolster his credibility with two fellow inmates, one of whom he sought to convince to murder an AUSA for money. To obtain a conviction for solicitation, the government was required to prove by "strongly corroborative" circumstances that Cope intended that another person "engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against . . . the person of another." 18 U.S.C. § 373(a). In mentioning the canoe incident first to Smallwood and later to Alexander, Cope sought to convince both of them of the seriousness of his interest in having the AUSA murdered. That there was indeed a 1987 murder, as testified to by the investigating detective, was relevant to showing that Cope was not simply making the whole thing up.

- 10 -

Cope's objection to the admission of this evidence on Rule 403 grounds fares no better. As an initial matter, he did not object to the admission of this evidence on that ground at the trial and thus plain-error review applies. "Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996). Cope, as shown, made the inmates' testimony relevant when he mentioned the 1987 shooting to them to bolster his seriousness and credibility in soliciting the AUSA's murder. And while this evidence was prejudicial to Cope, it was not unfairly so: The same reason the evidence was relevant (because it showed he meant business) is the same reason it was prejudicial. The admission of the inmates' statements under Rule 403 was neither unfairly prejudicial nor plain error.

The 403 balance with respect to the detective's testimony is a harder question. After permitting the inmates to relay their conversations with Cope about the alleged 1987 murder, the government (and court) had less reason to permit a detective to testify that the shooting had indeed occurred. Some of the risk of unfair prejudice to Cope prompted by this testimony was minimized when this same detective testified that the police verified Cope's alibi. But even if the district court should not have admitted the detective's testimony, a point we need not decide, the fact remains that Cope has not satisfied the rigorous requirements of establishing plain error. There was considerable other evidence of Cope's guilt and some of the detective's testimony (that Cope had a verified alibi for the 1987 murder) diminished the risk of undue prejudice from his testimony.

2.

Cope also challenges the relevance of a tape of a 60 Minutes program, which contained a segment entitled "The Poison Umbrella." Because Cope told Smallwood that he had learned about the "deadly poison" ricin through this 60 Minutes program, JA 67, and because he had discussed the use of ricin to murder the AUSA, he made the program relevant to the solicitation charge. It makes no difference that the government did not have to prove "the method of harm proposed" by Cope or that the program ran in 1991 while his solicitation did not occur until 2002. Br. at 17. The point of the evidence was to prove that the solicitation was real and serious. By showing how Cope wanted the AUSA murdered and by showing how Cope learned about this method of poisoning, the government legitimately tried to show that Cope meant business when he solicited Smallwood.

Cope's challenge to this evidence on Rule 403 grounds also goes nowhere. Reasoning that the 60 Minutes segment centered on issues of espionage and KGB operatives, Cope argues that these issues were wholly immaterial to his case and raised the potential for juror confusion. But the government did not show the jury the entire 60 Minutes tape, only the approximately five minutes of the segment that pertained to ricin. Even if the government had played the portion of the tape regarding Russians or the KGB, however, Cope still could not have claimed unfair prejudice: One of his statements to Smallwood, already conveyed to the jury, explained that ricin is "the way the Russians, the KGB, killed all their prisoners." JA 66. The district court did not abuse its discretion in admitting this evidence.

D.

Cope finally argues that the district court erred in sentencing him to ten years' imprisonment on each of the two threat counts—in violation of the 5-year statutory maximum in effect when Cope made the threats in August 2002. He is right. The district court sentenced him under legislation enacted in November 2002, three months after the crimes, *see* Federal Judiciary Protection Act of 2002, Pub. L. No. 107-273, § 11008(c)(1), 116 Stat. 1818 (2002), and accordingly the 5-year statutory maximum applies to each of the threat counts. The government agrees. While Cope did not raise this issue below and while the reduction in his concurrent sentences on the threat counts is not likely to reduce his overall punishment (given the 240-month sentence on the solicitation conviction), the government also agrees that we should remand the case for resentencing on these counts, and we see no reason not to do so in this case.

III.

For these reasons, we affirm Cope's convictions and his sentence on the solicitation charge. As to the threat charges, we vacate the sentence and remand the case to the district court for resentencing.