NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0559n.06

No. 06-2209

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Aug 12, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ARTHUR MANN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| KURT JONES, WARDEN, | ) | OPINION |
| | ) | |
| Respondent-Appellee. | ) | |

Before: GILMAN and McKEAGUE, Circuit Judges; SARGUS, District Judge.[*]

**SARGUS, District Judge.** Petitioner-Appellant Arthur Mann appeals the district court's

denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mann was charged

in Macomb County, Michigan with one count of conspiracy to commit first degree murder and one

count of soliciting first degree murder. The target of Mann's plot was his business partner and

brother-in-law David Bartmess. Mann apparently feared that Bartmess was poised to expose some

fraudulent bookkeeping on Mann's part. Mann had also had other business disputes with Bartmess.

David Bartmess was actually killed: he was shot five times at close range on the morning of February

7, 1994 at his place of business, the May Day Temporary Labor Services. Mann was charged in

Oakland County, Michigan with the actual murder of Bartmess, but the trial court denied his request

for joinder of the separate cases and, following Mann's conviction of the conspiracy and soliciting

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern
District of Ohio, sitting by designation.

charges, the murder charge against Mann was dropped. No one has ever been tried or convicted of the actual murder of David Bartmess.

Mann argues that his due process right to a fair trial was violated by the admission of evidence of the murder of David Bartmess. Mann argues that evidence of Bartmess's murder was not relevant to the conspiracy and soliciting charges that Mann faced, neither of which require that the intended act (murder) actually take place. Mann also argues that the evidence in question was highly prejudicial, insofar as it involved three days of testimony and was unnecessarily graphic and extensive. Mann reasons that evidence of Bartmess's murder was intended to unduly influence the jury to convict Mann of the conspiracy and soliciting charges, even though the evidence supporting those charges was relatively weak.

The Warden argues that evidence of the details of Bartmess's murder was highly relevant to the charges of conspiracy and solicitation because the actual murder of Bartmess closely paralleled Mann's instructions to the persons Mann solicited (even though it was not alleged that these persons actually murdered Bartmess). The evidence also corroborated the testimony of key witnesses Eric Masters and John Kwasniewski. In short, the Warden's position is that the manner in which Bartmess's murder was carried out amounted to strong evidence that Mann had conspired to kill, or solicited the murder of, David Bartmess. The Warden argues accordingly that Mann's claim at worst is a state-law claim that is not cognizable in federal habeas corpus and at best is a Fourteenth Amendment claim that nonetheless does not rise the level of denying Mann a fundamentally fair trial sufficient to warrant habeas corpus relief. In this regard, the Warden argues that the Michigan state courts did not contravene or unreasonably apply clearly established federal law. The district court agreed, holding that the evidence in question did not render Mann's trial fundamentally unfair and

that Mann did not establish that the state court's decision was contrary to or an unreasonable application of federal law.

Because the state trial court's decision to admit evidence about the murder of Mr. Bartmess did not constitute error rising to the level of depriving Mann of a fundamentally fair trial and the decision by the Michigan courts finding no error did not contravene or unreasonably apply clearly established federal law as determined by the Supreme Court, the district court did not err in denying the petition for a writ of habeas corpus. We therefore **AFFIRM**.

**I.**

On October 9, 1997, Petitioner-Appellant Arthur Mann was convicted of conspiracy to commit first degree murder (pursuant to Mich. Comp. Law § 750.157a) and solicitation of first degree murder (pursuant to Mich. Comp. Law § 750.157b, and Mich. Comp. Law § 750.316) in Macomb County Circuit Court. He was sentenced to mandatory life in prison on January 12, 1998. After exhausting his appeals in the Michigan state courts, Mann filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Michigan. The district court denied all of Mann's claims, after which Mann filed a notice of appeal and request for a certificate of appealability. The district court granted in part and denied in part Mann's motion for a certificate of appealability.

The single issue certified for appeal is whether Mann's due process right to a fair trial was denied when the state trial court allowed evidence of the actual murder, even though Mann was not charged with murder and murder was not an element of either of the offenses with which he was charged. Mann claims that his due process right to a fair trial was violated because the evidence of the murder was both irrelevant and highly inflammatory.

The district court's rendition of the relevant facts concerning the trial court's admission of evidence of the actual murder, which essentially were undisputed, is reasonably supported by the record and is as follows:

The petitioner's convictions stem from his solicitation of, and conspiracy to commit, the murder of his brother-in-law and business partner, David Bartmess, in Shelby Township, Michigan. Bartmess actually was killed: he was shot five times at close range on the morning of February 7, 1994 at the May Day Temporary Labor Services in Rochester Hills, Michigan and died at the hospital later that day. However, there was scant evidence at trial that the petitioner had a hand in the actual killing. Rather, the proofs focused on the petitioner's solicitation of *another* individual to kill Bartmess. That person never did commit the murder. The petitioner was charged with solicitation of murder and conspiracy to commit murder in Macomb County, and he was charged separately with the murder of Bartmess in Oakland County, but the trial court denied the petitioner's motion for joinder. It appears that the murder charge in Oakland County eventually was dismissed. The petitioner argues that evidence of the actual killing, therefore, should not have been allowed at trial.

At trial, the prosecution presented a number of witnesses who described the circumstances of Bartmess's death. An emergency room physician testified that Bartmess suffered five gunshot wounds to the head and was pronounced dead on the morning of February 7, 1994. The pathologist who conducted an autopsy of the victim explained that all of the gunshot wounds were fired at close range or while the gun was in contact with the skin. Photographs and videotape of the murder scene were also admitted into evidence.

\* \* \*

Temporary worker Robert DeVos testified that he found Bartmess after the shooting at about 7:30 a.m. and called 911. He described the injuries on Bartmess's head and said that he heard Bartmess moaning and gurgling. He acknowledged that Bartmess was a "smart ass" who sometimes upset employees and stated that he had heard workers threaten Bartmess. Emergency medical technician Michael Myers, who responded to the 911 call, described the wounds he observed on Bartmess and the condition of the crime scene, including the locations of shell casings he saw in the building. Several police officers also discussed their investigation of the crime scene.

The prosecution next presented evidence concerning the conspiracy and the solicitation of the murder. Eric Masters stated that he was testifying as part of an

-4-

agreement in which he pleaded guilty to solicitation of murder with a sentence cap of 20 years' imprisonment in exchange for the dismissal of a conspiracy to commit murder charge. Masters testified that he met the petitioner at his parents' jewelry store, which was next to a store run by the petitioner's wife. Masters and the petitioner developed a friendly relationship. Masters testified that the petitioner initially asked him if he could obtain a silencer for a handgun. Masters asked his friend, Craig Sizemore, if he would help locate such an item. In the fall of 1992, the petitioner asked Masters if he could find someone to commit a murder for $25,000. The petitioner told Masters how easy it would be, discussing the subject on many occasions. The petitioner also drove Masters to possible murder sites–a temporary service business and a residential area. Masters said that he tried to persuade Demetrius Meffer to commit the murder for $1,000. Meffer responded that he needed $150 to obtain a gun. Masters then told the petitioner that he had someone to do the job but needed $3,500 to give to him. According to Masters, the petitioner gave Masters $3,500 in February of 1993. Masters gave Meffer $300 but nothing more occurred. Masters admitted that he was a long-time user and supplier of cocaine and other drugs. Several witnesses confirmed that the petitioner had contact with Masters.

* * *

Craig Sizemore testified that Masters began asking him for a silencer sometime in 1991, but he never obtained one. Masters told him that the petitioner wanted the silencer.

John Kwasniewski testified that he first met Masters when they both worked on a construction crew in the summer of 1993. Masters began offering him money if he would kill someone, and Masters continued to pursue the matter all summer. Kwasniewski said that Masters was visited at the worksite several times by a man who wore summer clothes and a straw hat and drove a white Cadillac. Kwasniewski and Masters referred to him as "Cabana Man." Kwasniewski explained that Masters would leave the site to talk to the Cabana Man, and when he returned he would urge Kwasniewski more intensely to commit the killing. Eventually, Masters provided a location and description of the man to be killed: the man worked at a Temporary Service on Adams and Auburn Road, Northeast side; he was an older man with thinning hair, almost six feet tall, he wore glasses, and his name was Dave; he drove a Toyota Forerunner with "No Fear" on the window; he arrived at work at 5:30 in the morning. Masters also told Kwasniewski of a house where the intended victim lived, and added that Kwasniewski would get a bonus if he killed a woman who was with the victim. Kwasniewski identified the petitioner at trial as the Cabana Man but testified that he had never spoken to the petitioner. He noted that he had also seen the petitioner in a green Jeep. After Kwasniewski saw a newspaper article about Bartmess's shooting, he told Masters that he had done the job and wanted $7,000.

Masters told Kwasniewski that he would get back to him. The next day, Masters told Kwasniewski that he would not pay because "his people had already taken care of it on their own." Trial Tr., 9/30/1997, at 42. * * * .

*Mann v. Jones*, No. 02-10233-BC, 2006 WL 2594844, at **1-4 (E.D. Mich. Sep. 11, 2006).

Mann was convicted as charged and sentenced to concurrent terms of mandatory life and life in prison. He appealed to the Court of Appeals of Michigan, asserting among other issues that the trial court had abused its discretion in admitting evidence of the victim's murder. Rejecting the argument, the state appellate court concluded that evidence of the murder itself was highly probative of Mann's guilt because the manner in which the murder ultimately was carried out closely matched Mann's instructions and because it corroborated the testimony of Masters and those whom Masters had solicited to commit the murder. *People v. Mann*, No. 209711, 2000 WL 33403215, at *1 (Mich. App. Oct. 27, 2000). The appellate court also found that the evidence, although prejudicial, was not unfairly prejudicial and that any potential prejudice was cured by the trial court's repeated instructions regarding the limited purpose for which the evidence was admitted. *Id*. The Michigan Supreme Court denied Mann's application for leave to appeal. *People v. Mann*, 465 Mich. 855, 633 N.W.2d 143 (2001).

Mann filed a petition for a writ of habeas corpus in the district court for the Eastern District of Michigan, raising three claims for relief. Regarding Mann's claim that he was denied his Fourteenth Amendment due process right to a fair trial by the admission of voluminous and gruesome yet irrelevant evidence of the killing of David Bartmess, the district court concluded that the evidence did not render Mann's trial fundamentally unfair. *Mann v. Jones*, 2006 WL 2594844, at *8. The district court agreed with the state appellate court that the details of the murder were relevant because the manner in which Bartmess was killed closely matched Mann's instructions and

corroborated the testimony of key witnesses. The district court reasoned that "[t]he fact that Bartmess was killed in a manner that matched [Mann]'s instructions to another, would-be assassin rendered more likely the proposition that [Mann] actually conspired to have someone kill Bartmess." *Id*. The district court also noted that the state trial court had given limiting instructions regarding proper consideration of the evidence. Concluding that Mann had not demonstrated an evidentiary error rising to the level of a due process violation, the district court held that Mann had not established that the state court's decision was contrary to or an unreasonable application of federal law.

## II.

The district court had jurisdiction pursuant to 28 U.S.C. § 2254, the federal habeas corpus statute, as well as 28 U.S.C. §§ 1331 and 2241. This Court is vested with jurisdiction to hear this appeal pursuant to 28 U.S.C. §§ 1291 and 2253.

In reviewing a decision denying habeas corpus relief, this Court reviews the district court's legal conclusions *de novo* and its factual findings for clear error. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). However, where, as here, the district court appears to have made no factual findings or credibility determinations and decided the case based on the state court record, this Court reviews any factual findings made by the district court *de novo*. *Miller v. Webb*, 385 F.3d 666, 671 (6th Cir. 2004) (citing *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000), and *Moore v. Carlton*, 74 F.3d 689, 691 (6th Cir. 1996)); *see also Northrop v. Trippett*, 265 F.3d 372, 377 (6th Cir. 2001) ("When a district court decides a habeas petition without evidentiary hearing, we review that district court's factual findings *de novo*.").

Additionally, because this action was filed in the district court after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this action is governed by the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under the AEDPA, a federal court shall not issue a writ of habeas corpus on a claim that the state courts adjudicated on the merits unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors.

Under § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent "when the state court confronts facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent" or "when the state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases." *Williams v. Coyle*, 260 F.3d 684, 699 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406-07 (2000)). A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct legal principle from the decisions of the Supreme Court but unreasonably applies that principle to the facts of the petitioner's case. *Coyle*, 260 F.3d at 699. A federal habeas court may not find a state adjudication to be "unreasonable" simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Id*. Rather, a state court's application of federal law is unreasonable "only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent

as to fall outside the realm of plausible credible outcomes." *Barker v. Yukins*, 199 F.3d 867, 872 (6th Cir. 1999).

Further, § 2254(d)(2) prohibits a federal court from granting an application for habeas relief on a claim that the state courts adjudicated on the merits unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In this regard, § 2254(e)(1) provides that the findings of fact of a state court are presumed to be correct and that a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.

Mann argues that the state trial court erred in admitting evidence of the actual murder of David Bartmess both because the evidence was not relevant to the conspiracy and soliciting offenses with which Mann was charged and because the evidence was highly prejudicial. As a general matter, errors of state law, especially the improper admission of evidence, do not support a writ of habeas corpus. *See Estelle v. McGuire*, 502 U.S. 62 (1991); *see also Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006). To be entitled to habeas relief, a petitioner must demonstrate that an evidentiary ruling violated more than a state rule of evidence or procedure. Rather, in order to prevail, a petitioner must show that the evidentiary ruling was "so egregious that it resulted in a denial of fundamental fairness." *Giles*, 449 F.3d at 704 (citing *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)). Stated differently, "'[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.'" *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). A state court evidentiary ruling does

not violate due process unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Giles*, 449 F.3d at 704 (citing *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001)).

In this case, Mann has not demonstrated that the state trial court erred in admitting evidence of the actual murder of David Bartmess, much less that the alleged error rose to the level of fundamental unfairness depriving him of due process and a fair trial. Under the Michigan Rules of Evidence, all relevant evidence is generally admissible. Mich. R. Evid. 402. Rule 401 provides: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mich. R. Evid. 401. In turn, Mich. R. Evid. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In Michigan, the decision whether to admit evidence is within the trial court's discretion and will not be disturbed on appeal absent a clear abuse of discretion. *See, e.g., People v. Starr*, 457 Mich. 490, 494, 577 N.W.2d 673 (1998); *People v. Snider*, 239 Mich. App. 393, 419, 608 N.W.2d 502 (2000).

We agree with the decisions reached by both the state appellate court and the district court below that evidence of Bartmess's murder was relevant to charges of conspiracy to commit first degree murder and soliciting first degree murder. Bartmess's murder, whoever pulled the trigger, was carried out in a manner that was consistent with the instructions that Mann had given Eric Masters and statements that Masters had in turn made to Craig Sizemore and John Kwasniewski, as to the time, manner, location, and intended victim. That being so, evidence of the details of

Bartmess's murder fits the definition of "relevant evidence" because it has the tendency to make the existence of a plot by Mann to kill Bartmess, as well as actions in furtherance of that plot, more probable. Evidence of the details of Bartmess's murder also corroborated testimony by the prosecution's key witnesses and bolstered their credibility.

Masters testified that Mann had several times inquired whether Masters could obtain a silencer for a gun. Sizemore confirmed that when Masters asked him if he could get a silencer, Masters told Sizemore that it was for Mann. When Masters purportedly persuaded Demetrius Meffer to commit the murder, Meffer requested some money in advance to purchase a gun, which money Mann did provide to Masters knowing that the money was to finance the would-be assailant's purchase of a gun. David Bartmess was shot five times at close range. Testimony by the employee who had found the fatally injured Bartmess, the emergency medical technician who responded to the 911 call, the emergency room physician who attempted to save Bartmess, and the pathologist who performed Bartmess's autopsy all provided details concerning the fatal gunshot wounds. Thus, evidence of the details of Bartmess's murder was relevant for its similarity to one of the manners in which Mann proposed that the murder could occur.

The evidence was also relevant as to the time and location that Mann had proposed. Masters testified that in connection with the conversations that Mann had had beseeching him to commit the murder, Mann several times drove Masters to potential murder sites, including a temporary service business. Kwasniewski confirmed that when Masters solicited him to commit a murder at the behest of a man that Kwasniewski identified as Mann, Masters instructed Kwasniewski among other things that the intended victim worked at a temporary service business located on Adams and Auburn Road and arrived at work each day at 5:30 a.m. David Bartmess was fatally shot at his place of business

-11-

some time between 7:15 and 7:30 a.m. on February 7, 1994. Testimony by the wife of one of Bartmess's business partners who saw Bartmess as late as 7:15 a.m. and provided a description of the lay out of offices, several patrons at a nearby restaurant who recounted seeing a suspicious car at the temporary service business around 7:30 a.m., the employee who found the dying Bartmess, the emergency medical technician who responded to the 911 call, the emergency room physician who treated Bartmess, and the pathologist who performed Bartmess's autopsy all provided details concerning the location where Bartmess was shot and/or the time frame during which Bartmess was shot – a location and time frame consistent with what Masters and Kwasniewski testified that Mann had proposed.

Masters and Kwasniewski also testified about the person that Mann wanted killed. Kwasniewski described the person that Mann wanted killed, as related to Kwasniewski by Masters: an older man with thinning air and almost six feet tall who worked at a temporary service business on Adams and Auburn, whose name was Dave and who arrived at work every day at 5:30 a.m. driving a Toyota Forerunner with "No Fear" on the window. Other witnesses provided testimony shedding light on Mann's motive for wanting Bartmess to be killed–namely, that Bartmess had threatened to expose fraudulent bookkeeping in which Mann had been engaging in an effort to minimize his insurance costs and that Mann had had other business disputes with Bartmess. Thus, even if the conspiracy and soliciting offenses with which Mann was charged did not require that the intended act (murder) be committed, evidence that David Bartmess was in fact killed is relevant to charges that Mann conspired to and/or solicited someone to kill Bartmess because that evidence has a tendency to make it more probable that the conspiracy and solicitation existed.

Evidence of Bartmess's murder was also relevant because it corroborated the testimony of Masters, Sizemore, and Kwasniewski and bolstered their credibility. The importance thereof cannot be understated, in light of the fact that Masters and Kwasniewski were convicted as a result of the scheme and received more lenient prison sentences, as well as the fact that Masters was an admitted seller and user of drugs and Kwasniewski was an admitted abuser of alcohol. Their testimony would have been more vulnerable to attacks alleging partiality, bias, and questionable character absent evidence demonstrating that Bartmess was actually murdered in a manner consistent with discussions that Mann had had with Masters.

We are not persuaded that it is necessary, as Mann contends, that there be an established nexus between the alleged conspiracy and solicitation on one hand and the murder of Bartmess on the other in order for evidence of Bartmess's murder to be relevant. It is the similarity between the instructions that Mann gave Masters and the others whom Masters solicited and the murder itself that gives relevancy to evidence of the details of Bartmess's murder. Mann characterizes the parallels between the alleged conspiracy and the actual murder as a "temporal connection" because there was no evidence that either the conspiracy or solicitation resulted in the murder of Bartmess. He also contends there was evidence that Mann had suggested several different ways of killing Bartmess. Those arguments do not negate or diminish the fact that Bartmess's murder was in fact carried out in a manner consistent with one of the ways that Mann did suggest – namely, that Bartmess be shot at his place of business in the morning – sufficient to make relevant evidence of the details of Bartmess's murder.

Although not specifically addressed by the state appellate court or the district court below, we also find unpersuasive any argument by Mann that evidence of Bartmess's murder, even if

-13-

relevant, should have been excluded as unduly prejudicial. All evidence against a defendant is "prejudicial." *Robinson v. Runyan*, 149 F.3d 507, 514-15 (6th Cir. 1998). The proper question is whether evidence is unfairly prejudicial, for instance, by tending to suggest the existence of a fact on an improper basis. *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993). The evidence at issue, even if it was somewhat more extensive than was necessary, was not overly graphic or gruesome, as characterized by Mann. The prosecution presented no photographs of the victim at the scene and no autopsy photographs. Moreover, testimony by the emergency medical technician, the emergency room physician, and the pathologist strikes the Court as relatively benign by virtue of its clinical qualities. A single photograph of the scene depicting a blood stain is not the sort of evidence that a juror would find shocking, graphic or gruesome. Finally, we are persuaded, as were the state appellate court and district court below, that any possible prejudice was mitigated by the trial court's repeated instructions limiting the use for which the evidence of Bartmess's murder could be considered.

In *United States v. Cope*, 283 F. App'x 384, 2008 WL 2630366 (6th Cir. 2008), the defendant appealed his convictions in the Eastern District of Kentucky of soliciting another inmate to kill an Assistant United States Attorney ("AUSA") and making several threats to kill the same AUSA. As in the instant case, two witnesses (David Smallwood and Robert Alexander) testified that the defendant-appellant had solicited them to commit murder. That murder never occurred, and the defendant-appellant was charged neither with murder nor with any offense that required a murder to have been committed. Nevertheless, the district court allowed evidence of another 1987 murder that defendant-appellant claimed to Smallwood and Alexander that he had committed but for which no one was ever charged. The Court observed that, "[a]ttempting to convince Smallwood and

Alexander that he was serious about murdering the AUSA, Cope told them that he had shot two people when they paddled a canoe near his marijuana plants." *Id.* at 389. The defendant-appellant argued on appeal that evidence of those murders was irrelevant and unfairly prejudicial because the statements were untrue and because he was not charged with the murder. This Court rejected the argument, finding that the evidence was relevant:

> True or not, however, Cope's statements were made when he was trying to bolster his credibility with two fellow inmates, one of whom he sought to convince to murder an AUSA for money. To obtain a conviction for solicitation, the government was required to prove by "strongly corroborative" circumstances that Cope intended that another person "engage in contact constituting a felony that has as an element the use, attempted use, or threatened use of physical force against ... the person of another." 18 U.S.C. § 373(a). In mentioning the canoe incident first to Smallwood and later to Alexander, Cope sought to convince both of them of the seriousness of his interest in having the AUSA murdered. That there was indeed a 1987 murder, as testified to by the investigating detective, was relevant to showing that Cope was not simply making the whole thing up.

*Cope*, 283 Fed. Appx. at 390. The Court also rejected the defendant-appellant's argument that evidence should have been excluded as unfairly prejudicial, stating that "while this evidence was prejudicial to Cope, it was not unfairly so: The same reason the evidence was relevant (because it showed he meant business) is the same reason it was prejudicial." *Id*.

Although not directly on point, insofar as the case involved the admission of evidence of an uncharged murder in a case where the defendant was charged with soliciting a different murder, the Court's reasons for finding that the evidence was relevant and not unfairly prejudicial are instructive in the instant case. The probative value of the evidence of the uncharged murder in *Cope* arguably was less than the probative value of the evidence of Bartmess's murder in the instant case. Nonetheless, the Court in *Cope* recognized that evidence of the uncharged murder bolstered the credibility of the government's witnesses and that the evidence, although prejudicial by painting the

-15-

defendant-appellant in a bad light, was not *unfairly* prejudicial. The same can be said in the instant case.

Even if reasonable minds could differ on whether, by virtue of the extensiveness of the evidence of the details of Bartmess's murder, there was a risk that the jury placed undue emphasis on the actual murder of David Bartmess in convicting Mann of offenses that did not actually require that Bartmess be murdered, that possibility strikes us as insufficient to warrant habeas relief. It bears reminding that Mann faces a substantial burden of proof to demonstrate that he is entitled to habeas corpus relief. Mann must demonstrate not just that the state trial court erred in admitting evidence of Bartmess's murder, but also that the error was so egregious as to deny him a fundamentally fair trial. On top of that, Mann must demonstrate that the state courts, in finding no error, issued a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. This, Mann has failed to do.

**III.**

Applying these principles to the facts of this case, we conclude that Mann is not entitled to habeas corpus relief. Mann has not demonstrated that the state trial court committed error, much less error denying a fundamentally fair trial, in admitting evidence of the actual murder of David Bartmess. Mann has not demonstrated that the Michigan appellate court's decision finding no abuse of discretion resulted in a decision which was an unreasonable application of clearly established law as determined by the Supreme Court. Although an argument could be made that evidence of the details of Bartmess's murder, although relevant and not unfairly prejudicial, was a bit more extensive than necessary, that is not an argument that prevails in habeas corpus. The relevant inquiry is whether the trial court's admission of evidence amounted to an error so egregious as to deny Mann

-16-

his due process right to a fundamentally fair trial *and* whether the state courts' resolution of the issue resulted in a decision that contravened or unreasonably applied clearly established Supreme Court precedent. In this case, those inquiries must be answered in the negative.

Accordingly, the district court's decision finding that Mann was not entitled to habeas corpus relief is **AFFIRMED**.