**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0695n.06

**No. 09-6316**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| **MICHAEL FOLEY,** | ) | |
| | ) | **FILED**<br>***Sep 30, 2011***<br>LEONARD GREEN, Clerk |
| Petitioner–Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| **NANCY DOOM, Warden, Green River** | ) | EASTERN DISTRICT OF KENTUCKY |
| **Correctional Complex,** | ) | |
| | ) | |
| Respondent–Appellee. | ) | |

Before: NORRIS, GIBBONS, and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Appellant Michael Foley ("Foley") appeals the district court's denial of a writ of *habeas corpus* regarding his conviction for first-degree rape in Mason County, Kentucky. After his conviction and sentence were affirmed on direct appeal, Foley filed a motion to vacate his sentence based on a claim of ineffective assistance of counsel. After the state courts denied his motion, Foley filed a *habeas* petition in the United States District Court for the Eastern District of Kentucky. Foley now claims that the district court erred when it found that the Kentucky Court of Appeals did not act unreasonably in applying the *Strickland v. Washington*, 466 U.S. 668 (1984), standard to his ineffective assistance of counsel claim. For the reasons that follow, we affirm the decision of the district court.

No. 09-6316
*Michael Foley v. Nancy Doom*

I.

Foley was indicted in March of 2001 on charges of raping C.M. and of sexually abusing M.M., C.M.'s sister.

Foley and his wife, Sherri, were the upstairs neighbors of M.M. and her husband, Jason. *Foley v. Commonwealth*, No. 2002-CA-000063-MR, 2003 WL 22461535, at *1 (Ky. Ct. App. Oct. 31, 2003). M.M. testified that Foley groped her breast and propositioned her for sex sometime in February of 2001, prior to the incident with C.M

On February 19, 2001, Foley went downstairs to M.M.'s apartment to borrow some movies. C.M., then a twenty-four-year-old virgin, was visiting her sister in Maysville, Kentucky, for the first time. C.M. has mental disabilities and completed her education in a special education program. Shortly after Foley arrived, M.M. left the residence, leaving Foley and C.M. alone in the apartment. C.M. testified that Foley approached the chair she was sitting in and asked her if she wanted to "do it," to which C.M. shook her head, "no," and told him she was scared. She further testified that, despite her protestations, Foley began to unbutton and unzip her pants. C.M. stated that, after removing her pants, Foley pulled down his pants and inserted his fingers into her vagina once and his penis into her twice. Foley stopped only when Sherri came down and called out his name. Though she did not watch "anything that happened down there" during the encounter, C.M. was certain Foley inserted his penis because it felt different from when he inserted his fingers.

Foley testified that the encounter was consensual. He claimed that C.M. agreed to his request to "fool around" and that she took off her own pants and underwear. He agreed with C.M.'s testimony that he inserted his fingers into her vagina, but he denied ever inserting his penis. Foley

2

testified that his pants never came down; while he had taken off his jeans, Foley claimed he was still wearing a pair of Nike shorts and boxer shorts underneath. Foley's trial testimony differed from his interview with police, in which he claimed that he never touched C.M. at all.

Once M.M., returned home, C.M. revealed to her that she had been raped. M.M. then asked her husband to call the police. C.M. was taken to Meadowview Regional Medical Center ("Meadowview") for an examination, where Bonnie Jett, a social worker, observed C.M. for a couple of hours and took photographs of her injuries. Kay Foreman ("Foreman"), a licensed sexual assault nurse examiner, performed the routine "rape kit," which includes examination of the patient by removing the clothes to see if there is an injury, pulling head hairs and pubic hairs, a pubic hair combing, swabs of the mouth and vagina, and drawing of blood. Foreman testified that there was bruising on "various parts" of C.M.'s body. C.M. also had a "good bit of bleeding," a torn hymen, a tear below her vagina, bruising on either side of her vagina, and bruising inside her vagina. These injuries, Foreman testified, were consistent with penetration. Though Foreman speculated that the extent of the bruising and abrasions made it reasonably probable that a finger did not cause the injuries, she could not specify whether the penetration was digital or penile.

At trial, the results of the "rape kit" were not discussed. Foreman testified that she collected the data for the report, but she did not know the results. In fact, the results of the rape kit were negative for the presence of Foley's DNA on the victim in the form of semen or pubic hairs and negative for the presence of C.M.'s DNA on Foley in the form of pubic hairs. But Foley's counsel was unable to enter the report into evidence because counsel could not authenticate the report during cross-examination of Foreman and failed to call another witness who could have authenticated the

report. Thus, the jury never learned the results were negative. Because the evidence was never properly admitted, the jurors were not told the results of the rape kit even when they asked about the results during deliberation.

The jury convicted Foley of first-degree rape of C.M. but acquitted him of first-degree sexual assault of M.M. They sentenced him to 15 years' imprisonment. On direct appeal, the Kentucky Court of Appeals affirmed the trial court. *Foley*, 2003 WL 22461535, at *8. Foley then sought post-conviction relief, claiming ineffective assistance of counsel. Foley argued that his counsel was deficient when she did not enter the "rape kit" into evidence at the trial. The judge for the post-conviction phase conducted an evidentiary hearing and found that Foley's attorney had failed to subpoena the state police lab examiner who had prepared the report. Using the two-pronged test of deficiency and prejudice outlined in *Strickland*, the post-conviction court found that the attorney's failure to subpoena the lab technician was deficient. As to the prejudice prong, the court found that there was a strong probability that, had the lab report been entered into evidence, the outcome of the case would have been different. The post-conviction court therefore vacated the judgment and ordered a new trial.

The Kentucky Court of Appeals reversed. *Commonwealth v. Foley*, No. 2006-CA-000812-MR, 2007 WL 1378480 (Ky. Ct. App. May 11, 2007). In an unpublished opinion, the court assumed without deciding that Foley's representation was deficient but found that the prejudice prong of the *Strickland* test was not met. *Id.* at *3. The Kentucky Court of Appeals considered the physical evidence of bruising and bleeding, the medical testimony which supported C.M.'s version of the encounter, and the other physical evidence that contradicted Foley's testimony. *Id.* Then, noting the

4

possibility that the rape could have occurred through a partial opening in Foley's shorts or underwear so that no DNA would be transferred to C.M., the Kentucky court concluded that the negative rape kit results had limited relevance and would have been unlikely to have had any effect on the jury's decision. *Id.*

Addressing the rape kit evidence, the Kentucky court found that the transfer of pubic hair "may depend to a large extent on the duration and type of sexual activity, and further that the lack of transfer does not necessarily indicate that no sexual intercourse occurred." *Id.* In C.M.'s case, it was established that the encounter was brief and partial, minimizing the chance for transfer of pubic hair or bodily fluid. *Id.* Additionally, though Foley may have been wearing his shorts, this did not preclude him "from exposing his penis through a clothing opening and then partially penetrating C.M." *Id.* The court reviewed the totality of the evidence and found that Foley had not "'met the burden of showing that the decision reached would reasonably likely have been different absent the errors.'" *Id.* (quoting *Strickland*, 466 U.S. at 696). Because there was not a "reasonable probability" that the outcome would have been different, the court concluded that Foley had "failed to show that his trial counsel's performance prejudiced his defense." *Id.*

Foley then sought *habeas* relief in the district court. Central to Foley's petition was the jury's request for the results of the rape kit. Foley argued that, because the jury asked for the results from the rape kit, the jury was wavering during its deliberation; thus the evidence against him was not as strong as the Kentucky court had concluded. The district court, however, found that the Kentucky Court of Appeals properly considered the totality of the evidence and reasonably applied *Strickland*. The district court found it was reasonable for the Kentucky Court of Appeals to find that the negative

rape kit results "had very limited relevance and would have been unlikely to . . . impact . . . the jury's

verdict" in light of the "overwhelming evidence favoring conviction."

## II.

In a *habeas* appeal, we review the district court's legal conclusions *de novo* and any factual

findings for clear error. *Lovell v. Duffey*, 629 F.3d 587, 593–94 (6th Cir. 2011). Because Foley's

*habeas* petition was filed after April 1996, the Antiterrorism and Effective Death Penalty Act

("AEDPA") applies. *Cowans v. Bagley*, 639 F.3d 241, 246 (6th Cir. 2011). We will not disturb the

finding in the state *habeas* proceeding unless the adjudication of the claim "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," or "was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In this case, Foley only claims the state court unreasonably applied federal law. An

"unreasonable application . . . of clearly established Federal law" occurs when a state court identifies

the correct legal principle, but "unreasonably applies that principle to the facts of the prisoner's

case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "[A]n *unreasonable* application of federal law

is different than an *incorrect* application of federal law." *Id.* at 410.

The "clearly established Federal law" at issue here is the ineffective assistance of counsel

standard announced in *Strickland v. Washington*. To meet *Strickland*'s two-pronged test, a defendant

must show deficiency, "that counsel's representation fell below an objective standard of

reasonableness," and prejudice, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694; *see also Sutton v. Bell*, __ F.3d __ , 2011 WL 2207315, at *2 (6th Cir. 2011). A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome" of the trial. *Id.* Moreover, the court "must consider the totality of the evidence" that was before the trial court. *Id.* at 695. In the context of an ineffective assistance claim, a federal court's review of a state court decision is "'doubly deferential' . . . tak[ing] a 'highly deferential' look at counsel's performance through the 'deferential lens' of § 2254(d)*." Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (internal citation omitted).

## III.

Foley offers five reasons it was unreasonable for the Kentucky Court of Appeals to conclude his representation was not prejudiced by the failure to admit the rape kit evidence. However, none of these claims has merit, and when the claims are considered against the "totality of the evidence," Foley cannot show it was reasonably probable the result of his trial would have been different.

First, Foley claims it was error for the Kentucky Court of Appeals to characterize his testimony as "wholly inconsistent" with C.M.'s injuries. Foley testified that he only penetrated C.M. digitally, and he now argues that the rape kit's negative result shows his testimony was consistent with C.M.'s injuries. But the physical and testimonial evidence of C.M.'s injuries presented to the jury contradicted his testimony. The evidence included graphic pictures of C.M.'s bruising and bleeding, testimony of C.M., and medical testimony of Foreman. Further, Foreman testified that,

while she could not definitively state that a penile penetration caused the injuries to C.M., there was a reasonable probability that "at least some of the injuries" were caused by "something other than a finger." The jury considered the totality of the evidence of the injuries to C.M.—the bruising and bleeding, the pictures, the testimony of C.M., and the testimony of Foreman—in finding Foley guilty. The rape kit results only concluded that there was no semen present, no DNA from Foley in the form of pubic hairs on C.M., and no DNA from C.M. in the form of pubic hairs on Foley. While this evidence may cast some doubt on C.M.'s version of events, it does not make Foley's testimony consistent with C.M.'s injuries. Because Foley's testimony remains inconsistent with the other facts presented at trial, it was not objectively unreasonable for the Kentucky court to find the exclusion of the rape kit did not affect the outcome of the trial.

Second, Foley claims that the testimony of his wife, Sherri, when coupled with the negative results of the rape kit, might have led to his acquittal. Sherri, who interrupted the intercourse, testified that C.M. seemed to be enjoying the encounter with Foley. The trial court jury considered Sherri's testimony and weighed it appropriately in determining Foley's guilt. The rape kit results say nothing about consent and are completely unrelated to the testimony of Sherri Foley; therefore, the coupling of the rape kit results with Sherri's testimony has no bearing on application of the *Strickland* standard.

Third, Foley claims the Kentucky Court of Appeals found Foley's dishonesty in his interview with police "especially important." On the contrary, the state court merely noted that Foley had lied to the police about having had any sexual contact with C.M., which Foley later admitted was not true. *Commonwealth v. Foley*, 2007 WL 1378480, at *2. The rape kit evidence, which at best shows

there was no penile penetration, is completely unrelated to Foley's dishonesty about never having sexual contact with C.M. The exclusion of the rape kit evidence has no bearing on Foley's lack of credibility. This point does not show prejudice to Foley's defense.

Fourth, Foley argues that his acquittal on the sexual abuse charge against M.M. suggests that, with the negative rape kit report, he would have been acquitted of raping C.M. The jury found Foley not guilty of sexual abuse after considering the minimal evidence relating to the charge, such as convoluted testimony from M.M. as to the timeline of events leading up to and following the alleged assault and her failure to positively identify Foley as the perpetrator. Conversely, there was considerable evidence to support the rape charge. Because the charge of sexual abuse is completely unrelated to the rape kit evidence, Foley's acquittal on the charge of sexual abuse of M.M. has no bearing on the exclusion of the rape kit evidence and the application of *Strickland*.

Finally, the fact that the jury asked for the results of the rape kit does not indicate prejudice. Foley relies on *Ferensic v. Birkett*, 501 F.3d 469 (6th Cir. 2007) and *Powell v. Collins*, 332 F.3d 376 (6th Cir. 2003), but neither case is analogous to this one. In *Ferensic*, the jury asked to see a police report that included a sketch of the perpetrator, as the issue in the case was identification of the defendant without the benefit of eyewitness testimony. 501 F.3d at 470. The court, however, limited its holding to the situation in *Ferensic*. *Id.* at 484 ("We therefore limit our holding to the situation here where the record reflects the doubts of the jury itself as to the identification of the perpetrator."). In *Powell*, the jury was at a stalemate during the sentencing phase and could not agree whether to impose the death penalty. 332 F.3d at 401. The court held that the stalemate illustrated that, if defense counsel had "conducted a proper investigation and presented competent proof of mitigation,"

9

there was a "reasonable probability that the result would have been different." *Id.* (internal quotations omitted). In Foley's case, however, the jury did not experience a stalemate, and they had no difficulty deciding a punishment for Foley. The fact that the jury requested to see the results of the rape kit, together with the totality of the evidence, does not equate to a "reasonable probability" that having those results would lead to a different outcome. Foley's reliance on *Ferensic* and *Powell* is misplaced.

Because each of these arguments lack merit, and because they are reviewed against the totality of the evidence, Foley fails to show that the Kentucky court's holding was objectively unreasonable. The Kentucky Court of Appeals found that the rape kit results were inconclusive because the absence of pubic hair evidence in rape cases is not conclusive and because it was possible Foley committed the rape while keeping his shorts and boxer-shorts on. The Kentucky court compared this inconclusive rape kit evidence against the physical and photographic evidence of C.M.'s bruising and bleeding, C.M.'s testimony of the encounter, and Foreman's testimony regarding C.M.'s injuries being inconsistent with digital penetration. Having weighed all this evidence, the Kentucky court concluded there was no prejudice. We find it was not objectively unreasonable for the court to do so.

IV.

For the foregoing reasons, we affirm the district court.